IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| STATE OF HAWAI'I BY ITS ATTORNEY GENERAL, | ) ) ) | CIVIL NO. 07-00516 SPK-LEK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| THE NATURE CONSERVANCY; YEE HOP, LIMITED; THE UNITED STATES OF AMERICA; ET AL., | ) ) ) ) | |
| Defendants. | ) ) | |
| and | ) ) | |
| STEVE'S AG SERVICES, LTD., ET AL., | ) ) ) | |
| Defendants-Intervenors. | ) ) | |
| _____ | ) | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

I. INTRODUCTION

This is a quiet title action regarding ownership of a parcel of land located in the South Kona area of the Big Island of Hawai'i. The Court conducted a non-jury trial in this case in late-February through early-March of 2009. After a period for preparation of transcripts, the parties filed post-trial briefing in April 2009.

William Wynhoff appeared at trial for Plaintiff State of Hawai'i.  C. Michael Heihre appeared at trial for Defendant Yee Hop, Limited ("Yee Hop").  Ronald Self and C. William Chikasuye appeared at trial for Defendants-Intervenors Steve's Ag Services, Ltd., Steven Baczkiewicz, Contract Milling, Wesley McGee and Raymond McGee (collectively, "Steve's Ag").  Assistant United States Attorney Edric Ching appeared at trial for Defendant United States of America.[1]  Tom Leuteneker had appeared earlier in the action for Defendant Nature Conservancy.[2]

Pursuant to Fed. R. Civ. P. 52(a), the following constitute the Court's Findings of Fact ("Findings") and Conclusions of Law ("Conclusions").  Although the Court has not labeled paragraphs specifically as Findings or Conclusions, such labels are not necessary; the nature of the Findings and Conclusions to follow is apparent.  *See Tri-Tron Int'l. v. A.A. Velto*, 525 F.2d 432, 435-36 (9th Cir. 1975) ("We look at a finding or a conclusion in its true light, regardless of the label that

---

[1] The United States has consistently taken no position in this action, although it also has not affirmatively disclaimed interest in the subject parcel so as to divest this Court of federal jurisdiction under 28 U.S.C. § 2409a(e).  Its position is that since there is "a colorable argument that the Subject Property is part of Kahuku [and thus now part of Hawai'i Volcanoes National Park], the United States does not believe it can disclaim an interest in the Subject Property."  [Docket entry ("Doc.") 66, Position Statement of the United States of April 24, 2008, at 3].

[2] The Nature Conservancy has disclaimed "any and all right, title, claim, or ownership in and to the property" at issue, and has made no further appearances since February of 2008.  [Doc. 46].

the district court may have placed on it. . . . the findings are sufficient if they permit a clear understanding of the basis for the decision of the trial court, irrespective of their mere form or arrangement.") (citations omitted); *In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1262 (9th Cir. 1982) ("The fact that a court labels determinations 'Findings of Fact' does not make them so if they are in reality conclusions of law.").

## II.  FINDINGS AND CONCLUSIONS

### A.

This is a quiet title action brought by the State of Hawai'i, and removed to this Court by the United States, regarding the ownership of a roughly trapezoidal-shaped parcel of land of approximately 171.813 acres ("the Parcel") located in the South Kona area of the Big Island of Hawai'i.  Jurisdiction is based upon 28 U.S.C. § 2409a.  Venue in this district is proper under 28 U.S.C. § 1402(d).  The State of Hawai'i named and served known and unknown persons who might claim an interest in the Parcel pursuant to Haw. Rev. Stat. § 669-2.  Default of unknown persons was entered by the State Circuit Court before the action was removed to this Court.

Years ago, the Parcel was given a Hawai'i tax map key number, which is TMK (3) 8-8-01-008.  [Exhs. 29, 43].  For purposes of this trial, the TMK number

is used to reference the location of the Parcel, and not as the prior indication as to the correct ownership of the Parcel.

The adjacent landowners with potential claims to the Parcel's title (besides the State of Hawai'i) are the United States and the Nature Conservancy to the east (mauka), and Yee Hop to the west (makai). The Parcel is bounded on its east by the ahupua'a of Kahuku, which is now part of Hawai'i Volcanoes National Park (with the Nature Conservancy having a small interest in a relevant part of Kahuku). The Parcel is bounded on the west by the ahupua'a of Alika and Papa 1. Yee Hop now owns those portions of Alika.

The Court has spent considerable time since the trial reviewing the evidence and considering the arguments presented both before trial and in the post-trial briefing. Ultimately, the Court finds and concludes that the Plaintiff State of Hawai'i has met its burden of proof to demonstrate that it should be awarded title to the Parcel. *See, e.g.*, *Hustace v. Jones*, 629 P.2d 1151, 1152 (Haw. App. 1981) ("in an action to quiet title, the burden is on the plaintiff to establish his title to the land.").

## B.

Three basically different positions as to the title were asserted.

First, Defendant-Intervenor Steve's Ag, motivated by reasons set forth in

prior Court orders [*e.g*., Doc. 63], asserted that the Parcel is (or always was) actually part of the ahupua'a of Kahuku. If so, the Parcel had (perhaps unknowingly) been conveyed in 2003 to the United States and the Nature Conservancy by the Damon Estate, which owned relevant portions of Kahuku at the time. Steve's Ag relied in part on a description of Kahuku in Certificates of Boundaries No. 85 ("CB85") [Exhs. 4, 5], which was based on a survey conducted by D.H Hitchcock in 1875 and his corresponding Registered Map ("R.M.") 1112. [Exh. 32]. The relevant area was surveyed (or re-surveyed) in 1902 or 1903, as set forth in R.M. 2171. [Exh. 33].

Second, Defendant Yee Hop asserted that the Parcel is part of Alika and was intended to have been conveyed or granted to others (predecessor owners) in the early-1900's as parts of leases and subsequent sales of five "Alika Homestead" lots from the Territory of Hawai'i to those predecessor owners. Those predecessor owners ultimately conveyed the Alika Homestead lots to Yee Hop (although it is unclear whether there were intermediate owners). If the Parcel is included within those Alika Homestead lots, then Yee Hop contends that it now should have title to most of the Parcel (but not including a small southern portion of the Parcel adjacent to "Papa 1," which is south of Alika). Yee Hop relies primarily on descriptions of the eastern boundary in those conveyances (descriptions reading "to

ahu on Kahuku boundary" and "along Kahuku to ahu"), and on what it claims was an intent by the Territory of Hawai'i to have conveyed property up to the actual border of Kahuku.

Third, the State contends that the Parcel is neither part of Kahuku, nor property that was conveyed to the predecessor owners. Rather, it contends that when the Territory of Hawai'i conveyed the Alika Homestead lots to those predecessor owners it only conveyed a specific amount of land as described by metes and bounds. There was a mistaken description of the eastern (mauka) borders. The parties thought the eastern borders were along the Kahuku border, but it was realized at some point later that the Kahuku border was actually about 1000 yards to the east. What was left (even if left inadvertently) is a government remainder that was never actually conveyed to anyone and thus belongs to the State by operation of law.

The existence of such government remainders are well-known in Hawai'i, and are perhaps an inevitable result of Hawai'i's unique land history, and the measurement and mapping techniques of the late-1800's and early-1900's. *See Hustace*, 629 P.2d at 1152 ("the original surveys of land commission awards are frequently inaccurate; sometimes overlap; and sometimes leave gaps between apparently adjoining properties."). If original Kingdom, governmental, Territorial,

or State land was never actually awarded or conveyed, such land is State land. *See, e.g.*, *State by Kobayashi v. Zimring*, 566 P.2d 725, 731 (Haw. 1977) ("all land not awarded or granted remains public lands[.]").

In short,

● If the Parcel is (or was) in Kahuku, then the State's claim fails (and Steve's Ag's position is correct and thus the Parcel belongs to the United States and the Nature Conservancy);

● If the Parcel is (or was) in Alika and Papa 1 and was conveyed as part of the Alika Homestead lots in the early 1900's to predecessor landowners, then the State's claim fails (and Yee Hop's position is correct and Yee Hop should have title to the Alika portions of the Parcel);

● If, however, the Parcel is neither in Kahuku, nor is it property that was conveyed by the Territory of Hawai'i as part of conveyances of the Alika Homesteads, then the State's claim is correct and the Parcel is a government remnant belonging to the State.

## C.

The Court gives no preclusive effect to the prior June 2005 administrative decision by the State Board of Land and Natural Resources, at least as to the merits of the present quiet title dispute. Although the issues regarding title of the Parcel

were presented to an administrative hearings officer [Exhs. 219, 220], the record reflects that the administrative hearings officer's ultimate decision was that he had no jurisdiction to decide title matters (and thus had no jurisdiction to make or recommend findings regarding the penalties then at issue against Steve's Ag). Even if that administrative decision was adopted and then reviewed by a State Circuit Court, the only administrative finding or conclusion that would bind this Court would be that finding of no jurisdiction to quiet title. Any other findings or conclusions by the hearings officer as to predicate facts or law are not necessarily binding on this Court. Exhibits 219 and 220 remain part of the record, but are useful only for procedural background purposes.[3]

### D.

The ahupua'a of Kahuku was conveyed in 1861 by Royal Patent No. 2791 to C.C. Harris, according to its ancient boundaries. [Exhs. 3, 39]. The boundaries of Kahuku were certified in 1876 on CB85. Kahuku was eventually conveyed by the Damon Estate to the United States and the Nature Conservancy in 2003. [Exh. 6]. That conveyance from 2003 described Kahuku as the "Portion of land(s) described in and covered by Royal Patent Grant Number 2791 to C.C. Harris, being Tax Key

---

[3] The Court notes and overrules the State's objection [Doc. 171] to Steve's Ag's post-trial submissions of State Circuit Court orders and other documents regarding the administrative proceedings.

designation (3) 9-2-001-002, and containing an area of 115,652.968 acres, more or less." [Exh. 6, at 5].

The Court finds that the descriptions in CB85 from 1876 (and R.M. 1112) are unreliable in establishing the precise metes and bounds geographic boundaries of the ahupua'a of Kahuku, at least as to the areas relevant to the Parcel (any *other* courses or descriptions on CB85 were not the subject of this action). If followed literally as measured by CB85's chains and sometimes imprecise compass headings, the boundaries do not close; they could be off by over 5000 feet. [*E.g.*, Exhs. 31, 41; Testimony of Kodani of March 5, 2009, Transcript ("Tr.") vol. 4, at 12-23]. However, CB85 remains useful for historical and other purposes. For example, most of the original Hitchcock ahu laid in 1875 are valuable even today in current surveys.

The ahupua'a of Alika and Papa 1 were retained by the King in the Great Mahele, and were listed as Government lands in 1848. [Exh. 39]. In 1903, the Territory of Hawai'i leased five Alika Homestead lots by right-of-purchase leases. [*Id.*; Exhs. 9, 12, 15]. It similarly leased Papa 1 in 1902. [Exh. 19]. Upon fulfillment of conditions, those parcels were then sold to the lessees from 1907 to

1914. [Exh. 39; Testimony of Collins of Feb. 24, 2009, Tr. vol. 1, at 61-66].[4]

Kanakanui and Wright most likely made mistakes in their settings in 1902 or 1903 of the six ahu marking the eastern (mauka) border of the Papa 1 and Alika Homestead lots as depicted on R.M. 2171 (and later also included on R.M. 2468). They probably thought they were marking course 14 of CB85. Wright realized the mistakes in his mapping or re-survey in 1908. [Exhs. 23, 318; Testimony of Siarot of March 3, 2009, Tr. vol. 2, at 46-58, 79-82].

As evidenced by markings on Wright's original R.M. 2468 from 1909[5] and Siarot's testimony, the actual relevant Kahuku boundary is the line on R.M. 2468 that runs from elevation 5820[6] to elevation 5387[7] on R.M. 2468. This is the blue

---

[4] Exhibit 39 (Report of Collins) mistakenly lists Alika Homestead lots 4 and 5 as being sold in 1905. [Exh. 39, at 3]. The record, however, reflects that those lots were sold in 1914. [Exh. 17; Tr. vol. 1, at 64-65].

[5] *See, e.g.*, Exh. 312 ("ahu *taken by Wright* in 1903 as being Hitchcocks") and Exh. 317 ("ahu *taken by S.M.K.* in 1902 as being Hitchcock's" and "ahu SMK") (emphases added).

[6] Elevation 5820 is marked as "Hitchcock's ahu" on R.M. 2468 [Exhs. 34, 44] or as "Hitchcock's ahu Wright" on the original (1909) version of the map [Exhs. 210D-1, 316].

[7] Elevation 5387 is marked as "Hitchcock's ahu" on R.M. 2468 [Exhs. 34, 44] or as "Hitchcock's ahu Wright" on the original (1909) version of the map [Exhs. 210D-1, 311].

line depicted on page 25 of Yee Hop's Written Closing Argument [Doc. 166].[8]

This is meant to be along course 14 of CB85.  [*See* Exh. 312 and the "14" highlighted in the green box on page 39 of Yee Hop's Written Closing Argument [Doc. 166]].  In this regard, the Court favors the testimony and opinions of Plaintiff's witnesses Siarot and Kodani over that of Defendant-Intervenor's witness Christensen.  The Court is convinced that R.M. 2468, and the survey work that went into its preparation, renders it reliable (at least for purposes of ascertaining the Kahuku border of the Parcel at issue here).  [*E.g.*, Exhs. 23, 24, 25].  Thus, the Parcel is not part of Kahuku.  The Parcel was not conveyed to the United States and the Nature Conservancy in 2003.  Steve's Ag's position fails.

E.

When the Alika Homestead lots were conveyed to J. Deniz (Grant 5045 of Alika lot 1, in 1907), to W.H.G. Arnemann (Grant 5092 of Alika lots 2 and 3, in 1908), and to R. von S. Domkowicz (Grant 6102 of Alika lots 4 and 5, in 1914), they were conveyed by metes and bounds and precise acreages (669.00 acres, 599.0 acres, 599 acres, and 1198 acres) as described in the prior 1903 right-of-purchase leases.  Those 1903 leases were based on R.M. 2171 and the ahu placed

---

[8] The Court commends Yee Hop's counsel for the manner and presentation of the many old maps and documents submitted in this case.  The presentation at trial greatly assisted the Court's understanding of the evidence and issues.

by Kanakanui and Wright in 1902 or 1903. We now know that the descriptions of the eastern borders of the grants ("to ahu on Kahuku boundary" and "along Kahuku") were wrong. But they reflected the knowledge at the time in 1903; everyone *thought* that it was the Kahuku boundary. They were descriptions of the border of what was conveyed. But, even if the *descriptions* were wrong, this does not necessarily change the actual border of the acreage that was conveyed. (This is also true with Grant 4914 in 1905 of Papa 1, which concerns the portion of the Parcel not claimed by Yee Hop. [Exhs. 19, 21].)

While it is likely true that there was no intent to create a government remainder, a remainder was indeed created by operation of law. The descriptions could easily have read "to ahu on [*what we think* is] the Kahuku boundary" and that would also reflect the intent of the parties.

The Court gave much thought to the idea that – when the parcels in Alika Homesteads were conveyed to the predecessors-in-title of Yee Hop with the intent to convey up to the "border of Kahuku" – the intent was to convey land that is now included within the Parcel. The Court also considered whether, as a matter of equity under a theory of estoppel or mistake, the State should be somehow estopped from claiming that the remnant is now State land, considering that (1) the Territory may have originally intended to convey those portions of Alika to Yee

Hop's predecessors-in-title, and (2) any original error in 1902 and 1903 by Kanakanui and Wright in locating and placing ahu (as depicted on R.M. 2171) would have been the Territory's error.  Perhaps the Territory "misrepresented" what it was conveying (especially the grant of Alika Homestead lots 4 and 5 to R. von S. Domkowicz in 1914 – which was *after* the Territory would have had at least constructive notice that the property descriptions in the Alika Homestead conveyances were partially incorrect).  Maybe a theory akin to constructive fraud could have applied.

Ultimately, however, the Court is convinced that those predecessors (J. Deniz, W.H.G. Arnemann, R. von S. Domkowicz, F. Buchholtz) got what they thought they were getting and that the metes and bounds markings and area measurements (*e.g.*, "599.0 acres") control over the mistaken descriptions of one border (*e.g.*, "to the border of Kahuku").  The areas were fenced on the border marked with the "Kanakanui/Wright 1902/1903" ahu as described in the grants.  Some form of that fence, and a replacement fence, apparently still exists today.  [Exhs. 10, 13, 16, 223; Testimony of Constantinides of March 5, 2009, Tr. vol. 4, at 59-68]. *See State v. Hawaiian Dredging Co.*, 397 P.2d 593, 607(Haw. 1964) ("If considered ambiguous, the construction given a deed by the parties to it will be given effect unless it contravenes some rule of law") (citations omitted); *City &*

*County of Honolulu v. Bennett*, 552 P.2d 1380, 1387 (Haw. 1976).

Even if there could be an equitable basis for estopping the State because of a prior misrepresentation by the Territory, such an equitable claim would enure to the *predecessors*-in-ownership to Yee Hop, not to Yee Hop. There is no indication that any misrepresentation was made to *Yee Hop*. All indications are that Yee Hop got what it thought it was getting in 1946 [Exh. 18]; perhaps it only affirmatively asserted a possible interest in title in the Parcel after this quiet title action arose and after carefully reviewing the legal situation with wise counsel. No one from Yee Hop testified, for example, that it previously thought it owned the disputed Parcel when the koa trees were (or might have been) harvested by Steve's Ag. In any event, after due consideration, the Court ultimately rejects a claim based on equity.

The proposition that Yee Hop's border is "the Kahuku border" is logically different from the proposition that "the Kahuku border" is Yee Hop's border. If "the Kahuku border" was "re-marked" 1000 feet further away to the east, it does not necessarily change the location of Yee Hop's border. Yee Hop's border is fixed.

And so the Court falls back on the general principle in such survey matters that monuments control over descriptions. *See, e.g.*, *Application of Sing Chong Co., Ltd.*, 617 P.2d 578, 580 (Haw. App. 1980). When the Alika Homestead

parcels were conveyed to the predecessors-in-title to Yee Hop, they were conveyed by metes and bounds and precise acreages.  Again, the conveyance "to the Kahuku border" was "to [what we *think*] is the Kahuku border."  In ascertaining the intent of the parties from 1903 in awarding the leases, and up to the last sale in 1914, the Court finds and concludes that the intent was to convey particular parcels up to the marked boundaries (even if the parties mistook those boundaries as being on the Kahuku boundary).  The parties to those grants intended to convey set acreages just as much as they intended there not be a gap.  A remnant was created, albeit inadvertently.  The remnant is now State land.  *See, e.g.*, *Zimring*, 566 P.2d at 731.  The State prevails.  Title to the Parcel is awarded to the State.

### III.  CONCLUSION

The Plaintiff State of Hawai'i has proven that it should be awarded title to the Parcel.  Defendant Yee Hop has not met its burden to prove that it should have title.  Defendant-Intervenor has failed to prove that title belongs to the United States and the Nature Conservatory.  Plaintiff State of Hawai'i is the prevailing party.  The parties shall bear their own costs and fees.

The Court assumes that Plaintiff State of Hawai'i might want a form of judgment suitable for purposes such as recording or otherwise providing proof of title.  Therefore, Plaintiff State of Hawai'i is directed within 14 days to submit a

proposed form of judgment for Court review and approval, and to serve a copy of such a proposed form of judgment on the other parties appearing in the action.  The Court will consider any objections to the proposed form of judgment filed within 7 days thereafter.

    IT IS SO ORDERED.

    DATED:  Honolulu, Hawai'i, October 22, 2009.



                                        Samuel P. King  
                                        Senior United States District Judge

*State v. Nature Conservancy et al.*, Civ. No. 07-00516 SPK-LEK, Findings of Fact and Conclusions of Law